# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E. 42nd Street, Suite 2020          Telephone: (212) 317-1200
New York, New York 10165          Facsimile: (212) 317-1620

_____
ctucker@faillacelaw.com

June 8, 2020

**VIA ECF**
Hon. Alison J. Nathan
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

    Re:        <u>Bonilla Peralta et al v. Divya Drishti LLC et al</u>
    CASE #:    1:19-cv-06762-AJN

Your Honor:

    We represent Plaintiffs Taurina Bonilla Peralta and Susana Georgina Guillca. Plaintiffs were ostensibly employed as manicurists and pedicurists. We write to respectfully request that the Court approve the parties' settlement of the above-referenced matter.

    The parties have agreed to a negotiated Settlement Agreement (the "Agreement") after extensive settlement discussions at mediation. The Agreement is attached hereto as **Exhibit A.** We therefore ask the Court to approve the settlement, pursuant to <u>Cheeks v. Freeport Pancake House, Inc</u>., 796 F.3d 199 (2d Cir. 2015) and dismiss the case with prejudice.

    Plaintiff specifically requests that this Court retain jurisdiction for the purposes of enforcement and that any dismissal with prejudice incorporate specific language that the Court retains jurisdiction over the settlement for purposes of enforcement. "To retain ancillary jurisdiction to enforce a settlement agreement, "a district court's order of dismissal must either (1) expressly retain jurisdiction over the settlement agreement, or (2) incorporate the terms of the settlement agreement in the order." <u>Thurston v FlyFit Holdings, LLC</u>, 2020 US Dist LEXIS 98523, at *5 [SDNY June 3, 2020].

    **I.**    <u>Background</u>

    Plaintiffs were ostensibly employed as manicurists and pedicurists for Defendants. Defendants own, operate, or control a nail salon, located at 1051 Third Avenue, New York, New York 10065 under the name "Lenox Spa & Nails".

    Plaintiff Bonilla was employed by Defendants from approximately January 2019 until on or about May 13, 2019. From approximately January 20, 2019 until on or about January 26, 2019, Plaintiff Bonilla worked from approximately 4:30 p.m. until on or about 8:30 p.m., 1 day a week and from approximately 12:00 p.m. until on or about 8:00 p.m., 3 days a week (typically 28 hours per week). From approximately January 27, 2019 until on or about February 2019, Plaintiff Bonilla

worked from approximately 10:00 a.m. until on or about 8:00 p.m. to 9:00 p.m., 3 days a week (typically 30 to 33 hours per week). From approximately March 2019 until on or about May 13, 2019, Plaintiff Bonilla worked from approximately 11:00 a.m. until on or about 9:00 p.m. to 10:00 p.m., 3 days a week and from approximately 11:00 a.m. until on or about 8:00 p.m. to 8:30 p.m., 2 days a week (typically 48 to 52 hours per week).

Throughout her employment, Defendants paid Plaintiff Bonilla her wages in cash. From approximately January 27, 2019 until on or about February 2019, Defendants paid Plaintiff Bonilla a fixed salary of $85 per day. From approximately March 2019 until on or about May 13, 2019, Defendants paid Plaintiff Bonilla a fixed salary of $430 per week. On one occasion, Defendants paid Plaintiff Bonilla a fixed salary of $500 per week for one week worked. For approximately 5 days of work, Defendants did not pay Plaintiff Bonilla any wages for her work.

Plaintiff Guillca was employed by Defendants from approximately November 16, 2018 until on or about June 14, 2019. From approximately November 16, 2018 until on or about December 2018, Plaintiff Guillca worked from approximately 1:00 p.m. until on or about 7:30 p.m., 1 day a week, from approximately 9:50 a.m. until on or about 8:30 p.m., 5 days a week, and from approximately 11:00 a.m. until on or about 7:00 p.m., one extra day two weeks per month (typically 60.25 to 68.25 hours per week). From approximately January 2019 until on or about June 14, 2019, Plaintiff Guillca worked from approximately 9:50 a.m. until on or about 8:30 p.m., 3 days per week, from approximately 9:50 a.m. until on or about 9:00 p.m., 2 days per week, and from approximately 10:00 a.m. until on or about 7:00 p.m., one extra day one week per month (typically 54.57 to 63.57 hours per week).

Throughout her employment, Defendants paid Plaintiff Guillca her wages in cash. From approximately November 16, 2018 until on or about June 14, 2019, Defendants paid Plaintiff Guillca $10.00 per hour for all her hours worked.

Accordingly, Plaintiffs brought this action to recover overtime wages, liquidated damages, interest, attorneys' fees, and costs pursuant to The Fair Labor Standards Act of 1938, 29 U.S.C. 201 et seq., the New York Minimum Wage Act, N.Y. Lab. Law 650 et seq. and the New York Miscellaneous Industry Wage Order 12 NYCRR 142 et seq. Plaintiff also seeks damages pursuant to NYLL 195(1) and (3) for failure to provide wage notices and statements.

Defendants maintained handwritten records of cash tips, which were paid, but minimal records as to the alleged hours worked and pay.

## II. Settlement

In order to avoid the legal and factual risks of protracted litigation and judgment collection, the parties have agreed to an early settlement of the action for the sum of $20,625.00. The agreement here is fair to Plaintiffs. Defendants produced financial records to argue persuasively that they are unlikely to have the capacity to pay a significant judgment and disputed the number of hours that Plaintiffs claimed to have worked.

There is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." Lliguichuzhca v. Cinema 60, LLC, 948 F.Supp.2d 362, 365 (S.D.N.Y. 2013) (quoting

Crabtree v. Volkert, Inc., 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013)).  "In considering whether a settlement is fair and reasonable, the principal question is 'whether the agreement reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'"  Id. (quoting Le v. SITA Info. Networking Computing USA, Inc., 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008)).  Courts consider factors including "(1) the Plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." Wolinsky v Scholastic Inc., 900 F Supp 2d 332, 335 [SDNY 2012] (quoting Medley v. Am. Cancer Soc., No. 10-cv-3214 (BSJ), 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010)).

Plaintiffs alleged that they would be entitled to back wages of approximately $17,642.38 in the best case scenario.  The settlement will enable the parties to avoid anticipated burdens and expenses in establishing respective claims and defenses through further litigation and at trial.  Given Defendants' dispute as to the number of hours-worked and persuasive evidence of their financial condition, the likelihood of a timely recovery of a full judgment, plus attorney's fees and costs, is limited.  The parties settled the action at a mediation conference, which was held pursuant to the United States District Court Southern District of New York Mediation Referral Order for Cases Filed Under the Fair Labor Standards Act 29 U.S.C. Sec. 201 et seq.  This settlement is the result of arm's-length negotiation in which both sides were represented by sophisticated counsel with extensive experience in wage-and-hour litigation.  Plaintiffs were represented by counsel throughout this lawsuit and made an informed decision to settle the action at an early stage of litigation, without incurring the costs or encumbrance of trial.  There is no possibility of fraud or collusion as the Parties settled after extensive negotiations.

A court may approve a settlement where it "reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" Le v. Sita Information Networking Computing USA, Inc., No. 07 Civ. 0086, 2008 U.S. Dist. LEXIS 46174 at *2 (E.D.N.Y. June 12, 2008) (quoting Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1354 (11th Cir. 1982)); see also Kopera v. Home Depot U.S.A., Inc., No. 09 Civ. 8337, 2011 U.S. Dist. LEXIS 71816, at *2 (S.D.N.Y. June 24, 2011) ("If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved.").

In light of the contested factual and legal disputes, Plaintiffs believe the settlement is reasonable and should be approved.

### III. Plaintiffs' Attorneys' Fees are Fair and Reasonable

Under the Settlement Agreement herein, **Exhibit A**, Plaintiff Peralta will receive $5,129.40; Plaintiff Guilla will receive $8,273.94; and Plaintiff's counsel will receive $ 7,221.66 ($520.00 costs and $4,136.97 attorneys' fee).  This represents one third of the recovery in this litigation.  The amount provided to Plaintiffs' counsel under the settlement is fair and reasonable and well within the range of fees typically awarded in cases in this Circuit.

"Courts in this district typically approve fee requests of one-third of the total settlement amount."  Williams v Arqenta Inc., 2018 US Dist LEXIS 212914, at *6 [SDNY Aug. 10, 2018] (citing Thornhill v. CVS Pharmacy, Inc., No. 13 Civ. 5507, 2014 U.S. Dist. LEXIS 37007, 2014 WL

1100135, at *3 (S.D.N.Y. Mar. 14, 2014) (collecting cases)); see also Himrod v Cygnus Med., LLC, 2020 US Dist LEXIS 502, at *7 [SDNY Jan. 2, 2020] (citing Meza v. 317 Amsterdam Corp., No. 14 Civ. 9007, 2015 U.S. Dist. LEXIS 166890, 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015)); See also Antonio Alonso, Plaintiff, v. Le Bilboquet NY, LLC, et al., Defendants., No. 16-CV-8448 (JMF), 2017 WL 445145, at *1 (S.D.N.Y. Feb. 1, 2017) (Granting Plaintiff's attorney one-third of the settlement amount wherein "it is consistent with a commonly approved percentage, there are no opt-in plaintiffs, the case is not a collective action, and the attorney's fee award is based on an agreement between Plaintiff and counsel")(internal citations omitted); See Calle v. Elite Specialty Coatings Plus, Inc., 2014 U.S. Dist. LEXIS 164069 at *9 (E.D.N.Y. Nov. 19, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit"); Alvarez v Sterling Portfolio Inv. L.P., 2017 US Dist LEXIS 206043, at *16 [EDNY Dec. 13, 2017]) (one-third attorney fee is typical with no requirement for a lodestar cross check); See also Antonio Alonso, Plaintiff, v. Le Bilboquet NY, LLC, et al., Defendants., No. 16-CV-8448 (JMF), 2017 WL 445145, at *1 (S.D.N.Y. Feb. 1, 2017) (Granting Plaintiff's attorney one-third of the settlement amount wherein "it is consistent with a commonly approved percentage, there are no opt-in plaintiffs, the case is not a collective action, and the attorney's fee award is based on an agreement between Plaintiff and counsel")(internal citations omitted).

Plaintiff's attorneys' lodestar amount is costs of $520.0 and attorneys' fees of $8,855.50 for a total of $9,375.50.  Plaintiffs' attorneys' billing records are annexed as **Exhibit B**.  We also respectfully note that the settlement requires a payment plan of thirty-six (36) installments.  Our office will need to expend additional time and resources on this case including depositing checks, meeting our clients and providing their checks and ensuring they sign necessary paperwork to receive checks, potentially following up with the Defendants to send payment or potentially enforcing the settlement.

The amount provided by Plaintiff's counsel under the settlement is fair and reasonable and well within the range of fees typically awarded in this Circuit. See Pinzon v. Jony Food Corp., No. 18-CV-105(RA), 2018 U.S. Dist. LEXIS 87424 (S.D.N.Y. May 24, 2018) (awarding this firm a third, or 5.23 times the lodestar, in an early settlement and "recognizing the importance of encouraging the swift resolution of cases like this one and avoiding 'creat[ing] a disincentive to early settlement'— particularly where such settlement has provided Plaintiff with a substantial and speedy result." (quoting Hyun v. Ippudo USA Holdings et al., No. 14-CV-8706 (AJN), 2016 U.S. Dist. LEXIS 39115, 2016 WL 1222347, at *3 (S.D.N.Y. Mar. 24, 2016).; Shapiro v. JPMorgan Chase & Co., No. 11-CV-7961 (CM), 2014 U.S. Dist. LEXIS 37872, 2014 WL 1224666, at *24 (S.D.N.Y. Mar. 21, 2014) ("Lodestar multipliers of nearly 5 have been deemed 'common' by courts in this District."); Castaneda v. My Belly's Playlist LLC, No. 15 Civ. 1324 (JCF) (S.D.N.Y. Aug. 17, 2015) (Francis, M.J.) (awarding the Plaintiff' attorneys a contingency fee of one-third to account for risks in litigation); see also Calle v. Elite Specialty Coatings Plus, Inc., 2014 U.S. Dist. LEXIS 164069 at *9 (E.D.N.Y. Nov. 19, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit.").

In light of the nature of the issues herein and the extensive negotiations necessary to reach the agreed-upon settlement, Plaintiff's requested award is reasonable.  Given Plaintiff's counsel's significant experience representing plaintiffs in New York City in wage and hour litigation, Plaintiff's counsel was able to obtain a favorable pre-trial result due to the parties' cooperative exchange of information and frequent negotiations.  A brief biography of each attorney who performed billed work in this matter is as follows:

- Mr. Faillace is the Managing Member of Michael Faillace & Associates, P.C, and has been in practice since 1983. His work is billed at $450 per hour. From 1983 to 2000, he was in-house Employment Counsel with International Business Machines Corporation (IBM). Mr. Faillace taught employment discrimination as an Adjunct Professor at Fordham University School of Law since 1992 and at Seton Hall University Law School from 1995 to 1998, and is a nationally-renowned speaker and writer on employment law. He also is the author of the ADA, Disability Law Deskbook: The Americans with Disabilities Act in the Workplace, published by Practicing Law Institute (PLI), and other employment law publications and presentations. See, e.g., Manley v. Midan Rest. Inc., No. 1:14-cv-1369 (S.D.N.Y. March 27, 2017), Doc. No. 42 at *32, 35-37 (fees of $500 per hour for FLSA litigator with 34 years of experience)

- Clifford Tucker is an associate at Michael Faillace & Associates P.C. and is requesting an hourly rate of $350.00. Attorney Clifford Tucker developed a background in representing plaintiffs in personal injury and civil rights actions as an associate at: The Law Office of Richard Kenny, Bryan D. Fisher, LLC ("Fisher Injury Lawyers"), and Burns & Harris. He has managed a case load of over 100 actions from intake to verdict. He was selected to the Super Lawyers 2016 New York Metro Rising Stars list. He has taught Continuing Legal Education classes on case preparation, investigation, and discovery and assisted in teaching courses on obtaining settlement offers in personal injury actions, representing plaintiffs in motor vehicle cases, and selecting a jury in personal injury cases. He has also lectured to Veterans at the James J Peters VA Medical Center and at the Task Force of Social Workers of African Descent. Attorney Clifford Tucker graduated cum laude and with honors from Brooklyn Law School in 2013, where he was a member of the Moto Court Honor Society, Trial Division, and received the following awards: Richardson Scholarship, Academic Achievement Scholarship, Centennial Grant, Ellen Taubenblatt Harmon and Mark A. Harmon Award for Integrity and Ethics. He licensed to practice in the Southern and Eastern District of New York, the Second Circuit Court of Appeals, and in New York and New Jersey State Courts. The hourly rate compares favorably with rates that courts have approved for associates of comparable experience levels. See, e.g., Manley, supra, Doc. No. 42, at *33, 37.

- Paralegals at Michael Faillace & Associates, P.C. are billed at a rate of $100 per hour, well within a range of rates for paralegal work that courts have routinely approved. See, e.g., Manley v. Midan Rest. Inc., No. 1:14-cv-1369 (S.D.N.Y. March 27, 2017), Doc. No. 42 at *37; Gonzalez v. Scalinatella, Inc., 112 F. Supp. 3d 5, 29 (S.D.N.Y. 2015).

## IV. CONCLUSION

In full consideration of the issues presented in both <u>Cheeks</u> and <u>Wolinsky</u>, we believe that the parties' agreement is fair and reasonable, and that the settlement should be approved and the case dismissed with prejudice. A stipulation of Final Dismissal will be filed for so-ordering upon receipt of confirmation from the Court that the settlement has been approved. We thank the Court for the time and attention devoted to this matter.

                                         Respectfully submitted,

                                         By: <u>   /s/ Clifford Tucker            </u>
                                                    Clifford R. Tucker, Esq.